# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-4045

DANIEL HOAGLAND, KAREN HOAGLAND,
HOAGLAND FAMILY LIMITED PARTNERSHIP
and CLEAR LAKE MANAGEMENT
CORPORATION,

*Plaintiffs-Appellants*,

*v.*

TOWN OF CLEAR LAKE, INDIANA;
ROBERT D. TROLL, DEROLD H. COVELL,
EMMA J. BROWN, WILLIAM GEIGER, JOE
DRIVER, and THOMAS REITH, individually
and in their official capacity as current
and former members of the Clear Lake
Town Council and Plan Commission;
THOMAS WEHRENBERG, in his official
capacity as a former member of the Clear
Lake Town Council and Plan Commission;
RICHARD ALLEN LEHMAN, individually and
in his official capacity as Town of Clear Lake
Marshal and Clear Lake Zoning Inspector;
JULIE AZCHRICH, BARB DISSER, ALAN B. LARUE
and THOMAS REITH, individually and in their
official capacity as current and former
members of the Board of Zoning Appeals of
the Town of Clear Lake, Indiana,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:03-CV-241—**Roger B. Cosbey**, *Magistrate Judge.*

———————

ARGUED JUNE **8**, 2005—DECIDED JULY **18**, 2005

———————

Before CUDAHY, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* This lawsuit, accurately described by Magistrate Judge Roger B. Cosbey as a feud, pits Daniel Hoagland and the other plaintiffs,[1] owners of a heliport, against the town fathers of Clear Lake, Indiana, a very small and apparently wealthy community ringing the shores of an inland lake in northeastern Indiana. The town wants to get rid of the heliport and has amended its zoning ordinance (which originally did not mention landing strips) to make it applicable to landing strips and to require that the use of all preexisting unapproved landing areas be discontinued within 5 years. At some point, Hoagland made his opposition to the town's actions rather clearly known by posting a homemade "No Trespass" sign warning that "[t]his land is privately owned by an American national, with sovereign rights of God the Creator," and that "[v]iolations of the owners [sic] Private Christian, or property rights . . . shall be assessed a civil penalty of one million dollars in U.S. Dollars for each violation" as well as "up to ten years in prison." (Underlining omitted.) It is no wonder, then, that the plaintiffs challenged the town's right to

———————

[1] When we refer to "Hoagland," we mean Daniel Hoagland, clearly the moving force behind this lawsuit.

regulate landing strips in the present case—which is, by the way, not the only litigation involving these parties. In this case, the parties filed cross-motions for summary judgment in the district court. The defendants' motion was granted and the plaintiffs appeal. Our review is *de novo. Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638 (7th Cir. 2005).

Hoagland, a licensed pilot, lives in Clear Lake and commutes by helicopter to his electrical contracting business 60 miles away in Fort Wayne. To make his helicopter commute user-friendly, he constructed two landing pads on his property in Clear Lake. In 1999, the town sued Hoagland in Steuben County (Indiana) Superior Court, alleging that the helicopter takeoffs and landings were a "public nuisance." The case was submitted to mediation. Although Hoagland did not know it, at that time Clear Lake had no existing ordinance governing landing strips, but, Hoagland contends, during the negotiations Clear Lake officials often alluded to one. Eventually a settlement was reached in which Hoagland agreed to abide by several restrictions on the helicopter operations and, in turn, Clear Lake agreed to pay him a sum "to be negotiated." Hoagland claims Clear Lake never paid him anything and that he would not have agreed to the settlement had he known there was no ordinance in effect at the time.

Following the mediation, Clear Lake amended its existing zoning ordinance to designate an "[a]ircraft landing strip, pad, or space" as a "special use" requiring special permission of the Zoning Board of Appeals. It also provided that any preexisting unapproved aircraft landing area must be discontinued within 5 years or upon the transfer of the property.

One of the issues raised in this appeal is whether the ordinance should be invalidated because it is preempted by the Federal Aviation Act, 49 U.S.C. § 40101 *et seq.*

The preemption doctrine is based in the Supremacy Clause of the Constitution, which states, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the land." U.S. Const., art. VI, cl. 2. The clause has been interpreted as supporting three ways in which federal law can preempt state and local law: express preemption, conflict (or implied) preemption, and field (or complete) preemption. *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002). Express preemption occurs when a federal statute explicitly states that it overrides state or local law. Conflict preemption exists if it would be impossible for a party to comply with both local and federal requirements or where local law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Field preemption occurs when federal law so thoroughly "occupies a legislative field" as to make it reasonable to infer that Congress left no room for the states to act. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).

In the district court, according to Judge Cosbey, the plaintiffs' briefs were "hazy" on which preemption theory was being propounded. On appeal, it seems relatively clear they are relying on express preemption. They contend that 49 U.S.C. § 41713(b)(1) preempts the local ordinance. That section provides:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

The question, then, is whether the Clear Lake ordinance relates to "price, route, or service of an air carrier."

The plaintiffs argue that restricting Hoagland from making landings or departures from his helipad necessarily affects his route, and the ordinance is thus preempted. In support of this argument they point out that the helipads have been formally approved by federal and state authorities. In January 1996 and December 2000, the Federal Aviation Administration (FAA) issued Airspace Determinations which stated that daytime visual helicopter operations can be safely conducted at the Clear Lake Heliport. In February of 1996, the State of Indiana Department of Transportation Aeronautics Section issued a Certificate of Site Approval certifying that the Clear Lake Heliport has met the administrative requirements for a private-use heliport.

There is at least superficial force to the argument that the elimination of his helipad (the end result of the ordinance) would affect Hoagland's flight routes. Obviously it would. His route would no longer end in Clear Lake. But the question for us is whether the statute preempts so much, and we conclude that it does not. The Clear Lake ordinance is a land use, or zoning, ordinance, not a flight pattern regulation. We are not convinced that Congress meant to take the siting of air fields out of the hands of local officials. The siting of an airfield—so long as it does not interfere with existing traffic patterns, etc.—remains an issue for local control.

Cases from the Supreme Court and our sister circuits as well as FAA regulations support our conclusion. To see what is not preempted, we will first look at the kinds of regulations which are preempted. These include noise regulation ordinances and flight pattern controls. In *City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624 (1973), the Supreme Court determined that in light of the pervasive nature of the scheme of federal regulation of aircraft noise, as evidenced by the Noise Control Act of 1972, the FAA and the Environmental Protection Agency had full control over airport noise, preempting local control. The Court of

Appeals for the Eleventh Circuit followed suit in *Pirolo v. City of Clearwater*, 711 F.2d 1006 (11th Cir. 1983), finding that local ordinances prohibiting night operations and proscribing air traffic patterns were preempted. The Court of Appeals for the Ninth Circuit found that curfews on aircraft flights were preempted in *San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306 (9th Cir. 1981).

In *Abdullah v. American Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999), the court found air safety regulations pre-empted. And a state statute requiring drug testing of pilots was found to be preempted in *French v. Pan Am Express, Inc.*, 869 F.2d 1 (1st Cir. 1989).

These cases have one thing in common. They involve issues which reach far beyond a single local jurisdiction and which cannot sensibly be resolved by a patchwork of local regulations. It would be unmanageable—say nothing of terrifying—to have local control of flight routes or of flight times. Such things require nationwide coordination. But the issue of where a local governing body chooses to site an airport is different. When an airport is proposed, the FAA makes a determination of the safe and efficient use of the airspace in regard to the airport, but in situations such as the one before us, the agency leaves the decision not to allow a landing strip to the discretion of the local government.

A case specifically on point is *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 219 (8th Cir. 1990), in which the court found there was no preemption in the denial of permission to operate a heliport:

> Here, Condor asserts the City's action in denying its permit conflicts with the FAA's regulation of airspace. We see no conflict between a city's regulatory power over land use, and the federal regulation of airspace, and have found no case recognizing a conflict. *See, e.g., Wright v. County of Winnebago*, 73 Ill.App.3d 337, 29

Ill.Dec. 347, 352, 391 N.E.2d 772, 777 (1979) (FAA does not preempt local zoning authority); *Garden State Farms, Inc. v. Bay*, 77 N.J. 439, 390 A.2d 1177 (1978) (same). We therefore reverse and remand to the district court to dismiss the claim for lack of federal jurisdiction.

Similarly, in *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 783 (6th Cir. 1996), the court considered whether a city's prohibition against landing seaplanes on a city lake was preempted. Determining that a lake landing site was analogous to an airstrip on land, the court found that the prohibition was not preempted:.

> [W]e believe the United States' sovereign regulation of the airspace over the United States and the regulation of aircraft in flight is distinguishable from the regulation of the designation of plane landing sites, which involves local control of land (or, in the present case, water) use.

The court looked for guidance to FAA regulations, specifically 14 C.F.R. § 157.7(a).

The regulation is instructive. It provides, as to proposed airports, that the FAA will conduct an aeronautical study and issue a determination, considering matters such as the effect the proposed airfield would have on existing traffic patterns of neighboring airports and the effects on the existing airspace structure. But a "determination does not relieve the proponent of responsibility for compliance with any local law, ordinance or regulation, or state or other Federal regulation. Aeronautical studies and determinations will not consider environmental or land use compatibility impacts." Implicit in the regulation is that the FAA will determine whether it has any objections to a proposed site, and if it does, the conditions set out in its objections must be met. But, on the other hand, if the FAA has no objection, before it can build an airfield the proponent must

comply with local laws. In other words, the FAA leaves land use issues primarily to local governments.

In this case, the FAA Airspace Determination letters, which Hoagland obtained, recognize the boundaries of FAA determinations and make clear that certain issues remain for local control. Both letters contain basically the same language. We will quote from the December 2000 letter:

> This determination does not mean FAA approval or disapproval of the physical development involved in the proposal. It is a determination with respect to the safe and efficient use of airspace by aircraft and with respect to the safety of persons and property on the ground.

> In making this determination, the FAA has considered matters such as the effect the proposal would have on existing or planned traffic patterns of neighboring airports, the effects it would have on the existing airspace structure and projected programs of the FAA, the effects it would have on the safety of persons and property on the ground, and the effects that existing or proposed man-made objects (on file with the FAA) and known natural objects within the affected area would have on the heliport proposal.

> The FAA cannot prevent the construction of structures near a heliport. The heliport environs can only be protected through such means as local zoning ordinances or acquisitions of property rights.

Then the letters state quite clearly that local control remains:

> This determination in no way preempts or waives any ordinances, laws, or regulations of any government body or agency.

The situation before us involves a local land use issue, which is clearly left to local control. For that reason, the Clear Lake ordinance is not preempted.

The plaintiffs also raise an issue of inverse condemnation. They seek compensation under the Takings Clause of the Fifth Amendment for the inverse condemnation of the land by Ordinance 268, adopted on April 9, 2001. Although inverse condemnation is a recognized cause of action, the plaintiffs come up short on this issue as well because their claim is not ripe.

Inverse takings claims under the United States Constitution do not become ripe until adequate state remedies are exhausted. Until that time, no constitutional violation has occurred. In *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), the Court pointed out that the Fifth Amendment does not proscribe the taking of property, but only the taking without just compensation. If a state provides adequate procedures of seeking just compensation, there can be no violation until the procedures have been used and compensation has been denied. This principle has recently been reaffirmed. In *San Remo Hotel v. City and County of San Francisco*, 125 S. Ct. 2491 (2005), the Court determined that even though the Full Faith and Credit Clause precludes federal court relitigation of issues which were, in fact, decided in a state court case, nevertheless the ripeness rule of *Williamson County* still applies, and plaintiffs must take their case for compensation to the state courts. We have previously determined that Indiana law provides an adequate state remedy through Ind. Code § 32-24-1-16; *see SGB Fin. Servs., Inc. v. Consolidated City of Indianapolis-Marion County, Indiana*, 235 F.3d 1036 (7th Cir. 2000).

The plaintiffs say that they have, in fact, exhausted their state remedies because of a counterclaim filed in a lawsuit in 1999 asserting damages for inverse condemnation. That counterclaim, however, can have nothing to do with an alleged taking in 2001. The district court properly dismissed the inverse condemnation claim.

The civil rights claims—pursuant to 42 U.S.C. §§ 1983, 1985, and 1986—were also properly dismissed for a number of reasons, not the least of which is the statute of limitations. For §§ 1983 and 1985 claims, the statute of limitations is determined by the law of the state in which the violation took place. *Wilson v. Garcia*, 471 U.S. 261 (1985). Indiana's statute of limitations for personal injury claims is 2 years. Ind. Code § 34-11-2-4; *Coopwood v. Lake County Cmty. Dev. Dep't*, 932 F.2d 677 (7th Cir. 1991). Section 1986 contains its own one-year statute of limitations. All of the claims here are outside these limitations periods. This lawsuit was filed on June 23, 2003. The civil rights claims are based on the 1999 filing of the state court suit; the alleged misrepresentations during settlement negotiations, which occurred on April 14, 2000; and the enactment of the ordinances, which were last substantively amended on April 9, 2001. The attempts to cast the claims in ways which would avoid the limitations problem are unavailing. The continuing violation doctrine, the discovery rule, and the doctrine of equitable estoppel all are inapplicable to the particular facts of this case.

Finally, Judge Cosbey certainly acted wisely when he refused to exercise supplemental jurisdiction over Hoagland's many state law claims. Those claims, some of which raise novel questions—for example, Hoagland alleges that the Town of Clear Lake has never been "recognized as a legal entity"—are best left for decision by the state courts of Indiana.

For all of these reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***