Annare **LOUBSER,** Plaintiff,

v.

Alexander **PALA, R. Dennis Hoover, William R. Weist, Terry Smith,** Deputy Prosecutor, **Courtney B. Justice, Indiana Abstract & Title Co., Theresa Lepper, White County Title & Abstract Company, Steven Fishel, Kathy Fishel, Justice Law Office, Corina Montine, Brendt Dechert, David W. Stone IV,** and **Charles Traylor,** Defendants.

No. 4:04CV0075 AS.

United States District Court,
N.D. Indiana,
Hammond Division,
at Lafayette.

June 26, 2007.

---

Annare Loubser, Monticello, IN, Pro se.

Michael J. Stapleton, Cheryl M. Knodle, Elizabeth B. Searle, Ball Eggleston PC, Lafayette, IN, Terry L. Smith, Lewis Dowal Dellinger, Dellinger Dellinger & Smith, George W. Loy, John T. Million, Monticello, IN, Jay T. Hirschauer, Hirschauer & Hirschauer, Courtney B. Justice, Justice Law Offices, Logansport, IN, David A. Arthur, Indiana Attorney General's Office, Indianapolis, IN, Edward P. Dechert, Dechert Law Office, Kokomo, IN, for Defendants.

Terry L. Smith, Dellinger Dellinger & Smith, Monticello, IN, Pro se.

Courtney B. Justice, Justice Law Offices, Logansport, IN, Pro se.

Brent R. Dechert, Dechert Law Office, Kokomo, IN, Pro se.

David W. Stone, IV, Stone Law Office & Legal Research, Anderson, IN, Pro se.

Charles V. Traylor, Indianapolis, IN, Pro se.

### MEMORANDUM, OPINION AND ORDER

ALLEN SHARP, District Judge.

#### I.

This case was originally filed pro se by Annare Loubser in the Hammond division

at Lafayette on or about October 14, 2004. It has since made a trip to the Court of Appeals under the title of *Loubser v. Thacker,* 440 F.3d 439 (7th Cir.2006). More recently and relevant to this immediate proceeding is plaintiff's pro se 137–page, second amended complaint with 669 numbered paragraphs, filed on March 5, 2007. Not surprisingly, the second amended complaint has triggered motions to dismiss and related motions for judgment on the pleadings, filed by the defendants bottomed under Rule 12 of the Federal Rules of Civil Procedure (Fed.R.Civ. P.) or some part thereof. As a matter of some interest, the docket sheet now has 259 items.

This court has given very close attention the language and decision of the majority in the Court of Appeals. This court realizes fully that in its essentials this decision by the majority is a part of the law of the case. This court does not desire to get into any kind of analysis of what in that opinion might be dicta and what is a solid basis for the decision. That is a decision, of course, that has to be made by the Court of Appeals members themselves. It is readily apparent that there appear to be a number of tentative appellate inclinations in regard to this case. Long experience here suggests that those inclinations should be approached at the district court level with great care. Generally, the safest course is to read the reasoning of the majority literally and keep track of what actually was the basis of the reversal and remand here. This court is conscientiously trying to do that in this regard.

There is one comment in the majority opinion of the Court of Appeals with which this court is in wholehearted agreement. As a small-town county seat lawyer in a nearby rural county, as an Indiana state Appeals judge with jurisdiction over the area in question, and certainly since the undersigned became responsible many,

many years ago for the division of the U.S. District Court located in Lafayette, Indiana, which includes White County and other similar rural counties within its territorial area, this court has for 50 years been keenly aware of the informal culture existing in that area between lawyers and clients and judges. Certainly as the Court of Appeals indicated, that is a very useful way of understanding some of the factual allegations made in the most recently filed second amended complaint. This slice of legal-judicial culture is vitally important in understanding the realities of this case.

It is all too readily apparent that the Court of Appeals panel in its entirety agreed to apply the teaching of *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), a case which emanated from this district and circuit in dismissing with prejudice the two state judges who were heretofore parties to this case and are no longer such. What happened in that case when it came back to the Court of Appeals for this circuit is at least historically revealing. A series of opinions from the then members of the Court of Appeals are recorded in 601 F.2d 261 (7th Cir. 1979). One of those opinions by the then Chief Judge Fairchild is noted in some of the papers filed by this plaintiff.

When one reads all of those opinions of the then Court of Appeals, one is struck by the fact that there was then a wide array of approaches to the dimensions of claims under 42 U.S.C. § 1983. This phenomenon is especially revealing since the Court of Appeals then had to wrestle with the fact that the state court judge in that case, Harold D. Stump, a Judge of the DeKalb Circuit Court in Indiana, was out of the case and that fact created a number of different judicial approaches to what was left. To that extent, there is some similarity to the present procedural posture of this case. It is also apparent that some,

but certainly not all, and maybe a bare plurality of the members of the Court of Appeals in 1979 thought the circumstance of removing the immunized judicial defendant could be under a concept of a per se rule destructive of the remaining claims. There is no claim there or here such was a unanimous view, but it is historically interesting. Here, at least the majority opinion of the panel of the Court of Appeals who heard this case would have to be clearly on the side that there was no such per se rule and the removal of the judge under the concept of immunity was not destructive of the claims against the other defendants. That fact alone would not undermine this claim. But beyond any doubt, the two state judges here are *not* now parties. One of the other cases, also from this circuit in the same earlier time frame, and cited by this plaintiff is *Brucar v. Rubin*, 638 F.2d 987 (7th Cir.1980), which is little or no help here since the state court judge there had been removed from the state court case on grounds of prejudice. In this case, it is beyond any dispute that Judge Thacker was removed from the case and replaced by Judge Kepner. *Brucar* does very little to assist this plaintiff here.

This court has given close attention to the majority opinion of the Court of Appeals in *Loubser v. Thacker*, 440 F.3d 439, and this court has chosen to set forth here a large section from the majority opinion, although, admittedly, not the entirety of the opinion. At page 441 of the published opinion, it stated at some length as follows:

Loubser does not have a lawyer. Although her self-authored complaint is quite well written, it is sprawling—71 pages long divided into 115 paragraphs—disorganized, and repetitious. Worse, it has a paranoid quality, with some of the allegations bordering on, perhaps crossing over into, the fantastic. The complaint charges that over a three-year period beginning in August of 2001, state judges and court reporters, Loub-

ser's own lawyers, her former husband, building contractors, the owner of a jewelry store, and numerous friends and relatives of the other conspirators, conspired to destroy her financially and drive her out of the country by manipulating the divorce proceedings to deny her due process of law, and that they did all this because they consider her a "fucking South African Bitch who makes too much Fucking Money" as a physical therapist. One of the defendants, she charges, destroyed title documents essential to her divorce proceedings; two of the defendants effaced all records of the existence of a related case; her own lawyers, along with court reporters, altered transcripts; her lawyers refused to present crucial evidence; the judge presiding over the divorce proceeding consorted improperly with Loubser's ex-husband and a number of his witnesses, one of whom touched the judge and "rubbed his belly" (at a party, though, not in court). Among still other allegations, Loubser charges that the judge joked about golf with a witness while he was testifying and the court reporter deliberately deleted the exchange from the transcript, and that Loubser's ex-husband said to the judge, "goodbye judgee wudgee, I will see you around town." In support of the belly-rubbing allegation, Loubser has included in the appendix to her opening brief in this court photographs of the incident, but the photographs do not depict anybody's belly being rubbed.

It is highly improbable that the suit has any merit, but the allegations are not so fantastic that the suit can be dismissed out of hand, as being obviously frivolous, as in *Lee v. Clinton*, 209 F.3d 1025 (7th Cir.2000). The setting for the alleged conspiracy is White County, Indiana, a rural county with a population of only 25,000. The county

seat, Monticello, where the divorce proceedings were held, has a population of only 5,500. No doubt there is much less formality than attends litigation in big cities and much more social interaction among the judges, lawyers, and other members of the community. Loubser has probably mistaken innocent interactions for a vast conspiracy.

*Loubser,* 440 F.3d 439 at 441. With all respect and deference, these statements from the majority opinion in the Court of Appeals are a part of the law of the case here and binding on this court.

One point of fact is fairly important and is clear from the papers filed in this case both by and against this plaintiff. The quote repeated often in the second amended complaint and papers filed by this plaintiff refers constantly to the so-called South African Bitch statement that came out of the mouth of one of the alleged defendant co-conspirators. As indicated in the quoted statement from the Court of Appeals majority, it is asserted that the complaint charged that over a three-year period beginning in August 2001, state judges, court reporters, et al. were involved in a conspiracy against this plaintiff. A close examination of the papers now on file here indicates that statement was in fact made by one of the defendants here, Terry Smith, a lawyer, even earlier than this alleged conspiracy commenced. On paragraph numbered 84 of this plaintiff's second amended complaint, she alleges that this often-repeated statement was first made by the defendant Terry Smith, a lawyer, on December 31, 1998 when, according to the papers in this case, she had a legal dispute over contracts in 1995 and 1996 with the White County Memorial Hospital. According to the papers filed, the divorce action which seems to be the centerpiece of the plaintiff's concern, was not filed until August 14, 2001, at least two and-a-half years after the aforesaid statement was made by Terry Smith. It does not

appear that this plaintiff bottoms her conspiracy claims under 42 U.S.C. § 1985(3), given the mandates of *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). *See also Volk v. Coler,* 845 F.2d 1422 (7th Cir.1988). Carefully examining the time frame of this crude and rude statement by Terry Smith, this plaintiff is very hard pressed here to hang that statement as misconduct around the necks of any of these defendants. All other things considered, this plaintiff *might have* a claim under § 1985(3) as against the defendant Smith or possibly the White County Hospital, but it is likely that the statute of limitations would have long since expired on such a claim. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and *Hoagland v. Town of Clear Lake, In.,* 415 F.3d 693 (7th Cir.2005). It is of no small moment that neither of the writing judges at 440 F.3d 439 made any mention of 42 U.S.C. § 1985(3) as a possible basis for the plaintiff's claims here. The sole and only mention there was 42 U.S.C. § 1983.

The tone and mandate of the majority opinion of the Court of Appeals here cautions great indulgence under *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). *See also McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993), *Smith v. Fairman,* 862 F.2d 630 (7th Cir.1988), *cert. denied,* 490 U.S. 1008, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989), and *Cain v. Lane,* 857 F.2d 1139 (7th Cir.1988). While this court has dismissed with prejudice the two court reporter defendants, as well as Meg Babcock, on the basis of immunity, it has likewise dismissed the claims against those defendants in this case only because they testified against this plaintiff or indeed for her in the state court proceedings. Fundamentally this leaves the lawyer defendants and her former husband. At this time this court will leave them in for fur-

ther proceedings under the summary judgment procedure announced here.

■ There are some very basic aspects of claims under 42 U.S.C. § 1983 that must be remembered. Certainly the twin cases of *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) and *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986) generally preclude negligence as a basis for a § 1983 claim. Those two cases, decided in 1986, do not end the discussion. In the amended complaint and in the papers filed by this plaintiff, there seems to be an assertion that some species of her procedural due process rights have been violated by the conspiracy entered into by these defendants. There are other limitations that at least must be noted. One is in *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), which is important but not directly involved here. More precisely, the recent case of *Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) does directly relate to limitations on claims for the violation of procedural due process under § 1983. A recent application of that concept in this circuit is found in *Stephens v. Cottey,* 145 Fed.Appx. 179 (7th Cir.2005). It is conceptually difficult even when the second amended complaint is read with the facts asserted most favorably in the favor of this plaintiff to find a violation of some procedural due process constitutional right. In fact, it is also difficult to find the basis for a substantive right in this case. Whether this plaintiff likes it or not, a trial or hearings were had in the White Circuit Court in Monticello, Indiana which resulted in Appeals to the Court of Appeals of Indiana and finally the Supreme Court of Indiana which unanimously denied a petition to transfer. The fact that rulings were adverse in that procedural context does not in and of itself create a federal constitutional violation under § 1983. *See*

855 N.E.2d 1009, (Table) 844 N.E.2d 229, 812 N.E.2d 799, (Table) 798 N.E.2d 567.

This court can and does take judicial notice that no less than twelve law firms or offices are now involved in the defense of this case. Those firms are scattered across Indiana from Indianapolis to western north central Indiana, and, obviously, very substantial resources are now being spent both as to lawyers and judicial time in this case. The court record is now retained in boxes.

In addition to the motions to dismiss filed by these defendants, the plaintiff has filed extensive memoranda in response which the court has examined carefully. For immediate purposes, this court now takes up the motions to dismiss; one on or about and March 27, 2007 on behalf of Sondra Rumple, and one on April 2, 2007 on behalf of the defendants, Meg Babcock and Kathy J. Freeman. There is no doubt that the pleadings in this case thus far are replete with citations to *Timms v. Frank,* 953 F.2d 281 (7th Cir.), *cert. denied,* 504 U.S. 957, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992), and *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982).

## II.

■ Close attention needs to be given to the allegations in the second amended complaint as against the defendant, Meg Babcock. Babcock's status of so-called State actor, unlike most other defendants in this case, is important for purposes of the Fourteenth Amendment and for 42 U.S.C. § 1983. The Attorney General of Indiana has basically invited this court to revisit issues under Rooker–Feldman and the so-called Domestic Relations Exception, but this court will most respectfully decline that invitation for the time being. What is of particular relevance here is the exact status of Meg Babcock. It is alleged and not disputed that a letter of complaint

about the conduct of Judges Thacker and Kepner was sent to Meg Babcock at her office in the State House in Indianapolis, Indiana on or about April 20, 2004, and six days later on April 26, 2004, Miss Babcock replied in a letter to this plaintiff and a form for a sworn affidavit. This plaintiff admits in her pleadings that she did not bother to re-file it. Such is the sum and substance of the conduct of Meg Babcock that some way or other ties her into this alleged conspiracy.

This court has given close attention to *Kissell v. Breskow*, 579 F.2d 425 (7th Cir. 1978), and *Clulow v. State of Oklahoma*, 700 F.2d 1291 (10th Cir.1983).[1] The duties of the counsel to the commission are found in Indiana Code 33–38–14–3, and they are completely parallel to those previously exercised by Sheldon Breskow as a part of the disciplinary commission when he was its executive secretary. The Court of Appeals called this "quasi-judicial immunity." This court thus rules that for purposes of this case, and considering the allegations here against Meg Babcock, she enjoys the same species of absolute immunity that is reflected by the Court of Appeals in this circuit in *Kissell*. Thus, the complaint as against Meg Babcock is now **DISMISSED WITH PREJUDICE. IT IS SO ORDERED.**

### III.

 The court now takes up the motion to dismiss filed on behalf of Ms. Freeman, the Official Court Reporter of the Benton Circuit Court as well as Sondra Rumple, Reporter of White Circuit Court, as they are alleged in the second amended complaint. There is no doubt that the accuracy of a state court transcript can become constitutionally important. This court dealt with the same in *Ben–Yisrayl v. Davis*, 277 F.Supp.2d 898 (N.D.Ind. 2003), *aff'd*, 431 F.3d 1043 (7th Cir.2005).

This is a vastly different case than *Yisrayl*. One can extrapolate the various immunities described in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), as they later adopted in *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) to include the official conduct of a state court official court reporter. Certainly, there is no constitutional right to an absolutely and totally accurate transcript. *Tedford v. Hepting*, 990 F.2d 745 (3d Cir.1993). Before the fault in a transcript can be the basis of relief under 42 U.S.C. § 1983, it must be shown that the plaintiff in this case was some way disadvantaged by any errors in the transcript, and that simply is not alleged as to this state court official court reporter. *Colyer v. Ryles*, 827 F.2d 315 (8th Cir.1987). In this civil case, there must also be some species of intent more than negligence. That failure is fatal to this complaint as to these court reporters. Therefore, this court now **DISMISSES** this complaint as to Ms. Freeman and Ms. Rumple, and such dismissal is **WITH PREJUDICE. IT IS SO ORDERED.**

### IV.

This court has now given close attention to the following statement in *Butz* and its implications here:

> The cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial process rather than its location. As the *Bradley* Court suggested, *Bradley v. Fisher*, 80 U.S. 335, 13 Wall. at 348–349, 20 L.Ed. 646 (1900), controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconsti-

---

**1.** *But see Garcia v. Wilson*, 731 F.2d 640 (10th Cir.1984)

tutional animus. *See Pierson v. Ray,* 386 U.S. at 554, 87 S.Ct. at 1217. Absolute immunity is thus necessary to assure that judges, advocates, and *witnesses* can perform their respective functions without harassment or intimidation. 438 U.S. at 512, 98 S.Ct. 2894 (1978) (emphasis added)

That precise statement was included in *Briscoe* with this added comment:

> In short, the common law provided absolute immunity from subsequent damages liability for all persons-governmental or otherwise-who were integral parts of the judicial process. *It is equally clear that § 1983 does not authorize a damages claim against private witnesses on the one hand, or against judges or prosecutors in the performance of their respective duties on the other.* When a police officer appears as a witness, he may reasonably be viewed as acting like any other witness sworn to tell the truth-in which event he can make a strong claim to witness immunity; alternatively, he may be regarded as an official performing a critical role in the judicial process, in which event he may seek the benefit afforded to other governmental participants in the same proceeding. Nothing in the language of the statute suggests that such a witness belongs in a narrow, special category lacking protection against damages suits. We must ask, however, whether anything in the legislative history of § 1983 points to a different conclusion.

460 U.S. at 335, 103 S.Ct. 1108 (1983) (emphasis added here). Earlier, the *Briscoe* majority stated:

> At least with respect to private witnesses, it is clear that § 1983 did not abrogate the absolute immunity existing at common law, and petitioners do not contend otherwise. Like the immunity for legislators at issue in *Tenney v. Brandhove, supra,* the common law's protection for witnesses is "a tradition so well grounded in history and reason" that we cannot believe that Congress impinged on it "by covert inclusion in the general language before us." 341 U.S. at 376, 71 S.Ct. at 788.

460 U.S. at 335, 103 S.Ct. 1108.

█ The question comes as to whether any of these defendants who are here solely because they gave testimony in the related state judicial proceedings are entitled to the species of immunity mentioned in *Briscoe* and *Butz.* This court thinks they are and **DISMISSES** all such defendants **WITH PREJUDICE.** This ruling applies to the following defendants as referenced in the second amended complaint: William Roth, Candace Roth, Gregory Roth, Rusty Roth, Kindra Roth, Jillian Roth, David Diener, Ronald N. Halsen, Michael Hamilton, Douglas Radersdorf, Thomas A. Grzesik, Lawrence Culp, and Frederick Henney.

Unfortunately, these rulings do not relieve this court and all others concerned of much more very hard work. Given the decision of the Court of Appeals as reflected in 440 F.3d 439, and consistent with the mandate of the majority there, this court has determined to now convert all of the remaining motions to dismiss by the remaining defendants into motions for summary judgment under Rule 56, Fed. R.Civ.P. This approach of using Rule 56 will insure that the remaining defendants in this case, their lawyers, and indeed this court itself, have taken on the very extensive task of doing some very hard work before this case is brought to an appropriate conclusion.

This court fully realizes it cannot gainsay the majority decision of this panel of the Court of Appeals and has no intention of doing so. Its starting point here must

be and is where the majority of the Court of Appeals left off.

This court now **GRANTS** a period of discovery relevant to the aforesaid motions for summary judgment. Any and all discovery related to these motions for summary judgment *must* be completed no later than December 31, 2007, and no extensions of time will be granted for that function. Thereafter, the proponents of these motions for summary judgment are given until February 1, 2008 to file any and all briefs, motions and materials in support of the aforesaid motions for summary judgment. The defendants are here reminded of the need to comply with the mandates of *Lewis v. Faulkner.* Thereafter, the plaintiff is given until May 1, 2008, in which to file materials and briefs in response to the motions for summary judgment. Thereafter, the defendants are given until June 1, 2008 to file replies. This court expects full compliance with this time schedule. With regard to the dismissals of all defendants here, such dismissals shall be with each party paying and sustaining their own costs.