NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 24, 2011
Decided April 28, 2011

*Before*

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 10-3282

| | |
|---|---|
| James Hendrix, et al., | Appeal from the United States District |
| *Plaintiffs-Appellants,* | Court for the Southern District of |
| | Indiana, Indianapolis Division |
| v. | |
| | No. 09 CV 00099 |
| Maury Plambeck, in his official capacity | |
| as City of Indianapolis Director of | **Sarah Evans Barker**, *Judge.* |
| Metropolitan Development, | |
| *Defendant-Appellee.* | |

**O R D E R**

After many months of notices and hearings, the City of Indianapolis tore down a public nuisance—a former bar that had fallen into disrepair. There was some confusion about who actually owned the property before it was razed, but it is clear that the owner did not seek compensation through the Indiana courts. Instead he and another party opted to file suit under § 1983, claiming a Fifth Amendment takings violation and a Fourteenth Amendment due process violation. The district court dismissed the suit because the claims were not ripe and otherwise meritless. Plaintiffs appeal, and we affirm.

I.

In June 2007, two engineers employed by the Indianapolis Department of Public Works were examining commercial buildings in Indianapolis. One of those buildings at 1409 East Washington is the focus of this lawsuit. From the outside, the engineers could tell that on the rear part of the building the roof was collapsing. More engineers were called in, and they all agreed that the building was unsafe. A placard was placed on the building alerting the owner and public to that effect.

The next month, when the City of Indianapolis tried to speak with the owner of record, Darlene Ramsey, and have her fix the roof, they ended up talking with James Smith, who identified himself as Ramsey's common-law wife. [1] One of the engineers told Smith about the problems with the property and the steps he would have to take to remedy them. Over the next several months, the City waited for Smith to submit some proposed plans on how he would fix the roof, but he never did.

So in October of that year, the City got an inspection warrant and went inside to check out the interior. Up until this time, the City's engineers had only observed the building's exterior problems. Once inside, the engineers saw that the roof was collapsed, the floors were crumbling, the ceiling was falling in at parts, the staircase was collapsed, wires were exposed, gas tanks and liquor bottles were scattered throughout the place, and there was even a gun on the floor. In other words, the building was dilapidated and a nuisance. After seeing all this, the City declared it a hazard and ordered it demolished. A public hearing on the matter was set for January and notice was sent to Ramsey. There is a dispute about whether she actually received the letter or whether it was returned. Regardless, the City also had a copy of the notice hand-delivered to her home, and notice was twice published in the *Indianapolis Star*. Neither Ramsey nor Smith attended the hearing, and the building was ordered demolished.

A month later, Ramsey and Smith retained an attorney and sought judicial review of the demolition order. A hearing on the matter was eventually held in May. At the hearing, Ramsey told the judge that she had recently quitclaimed the property to James Hendrix, the party of interest in this appeal. Hendrix attended the hearing and at that time worked as a paralegal for Ramsey's attorney. When the judge learned that Ramsey no longer owned the property, he held that she lacked standing to object to the demolition

---

[1]Indiana does not recognize common-law marriages. Indiana Code § 31–11–8–5; *Vaughn v. State*, 782 N.E.2d 414, 422 n.6 (Ind. Ct. App. 2003). So, presumably Ramsey and Smith were cohabiting for some extended period of time.

order and overruled her objections. At this time, Hendrix did not try to intervene; instead he waited for a week and then filed a motion to intervene. His motion was denied as untimely, and the building was destroyed in July—a full year after it was deemed unsafe.

Sometime later, Smith and Hendrix sued the City under § 1983, claiming that its actions constituted a taking of Hendrix's property and otherwise violated his due process rights. From the complaint and briefs, it was unclear what Smith's claim was, and the district court dismissed him from the case. The district court also granted summary judgment for the City, holding that because Hendrix had not yet pursued an inverse-condemnation claim in the state courts, his claims were not ripe. It also held that Hendrix's Fourth Amendment claim was waived and otherwise meritless.

## II.

We review the district court's grant of summary judgment de novo and construe all facts and reasonable inferences in Hendrix and Smith's favor. *Winsley v. Cook County*, 563 F.3d 598, 602–03 (7th Cir. 2009).

## A.

On appeal, Hendrix makes the same principal argument he did below: when the City demolished the building this constituted a taking under the Fifth Amendment and otherwise violated his due process rights. The fact that Hendrix labels his claim as a "taking" and a "due process violation" does not affect the analysis. *River Park, Inc., v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir. 1994). Regardless of how Hendrix labels his claim, in this area of the law there are certain steps a property owner must take before bringing a § 1983 lawsuit. *Hager v. City of W. Peoria*, 84 F.3d 865, 869 (7th Cir. 1996) ("The exhaustion requirement of *Williamson County* applies whether plaintiffs claim an uncompensated taking, inverse condemnation, or due process violation.").

The Fifth Amendment does not prohibit any taking of property by the state, only "taking without just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). This means that before filing suit under § 1983, a property owner must seek compensation in the state courts by filing an inverse-condemnation suit. *Id.* at 195, n.13. In other words, "a takings claim does not accrue until available state remedies have been tried and proven futile." *SGB Fin. Serv. v. Consolidated City of Indianapolis-Marion Cnty*, 235 F.3d 1036, 1037 (7th Cir. 2000). Here, Hendrix has not pursued the remedies that Indiana has provided for property owners who claim they have had their

property taken by the state. *See* Ind. Code 32-24-1-16, *et seq.* (providing the procedure for such claims); *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 699 (noting "[w]e have previously determined that Indiana law provides an adequate state remedy through Ind. Code § 32-24-1-16"). Thus, his claims are not ripe, and the district court properly dismissed them as such.

It's worth noting that while Hendrix does not have a federal takings claim because he failed to exhaust his state remedies before filing this suit, there is another reason his claim would likely fail if he did pursue an inverse-condemnation suit: the City did not take Hendrix's property. A "taking" occurs when the state either uses its regulatory or eminent-domain power to take a private party's property for public use, even if that means giving it to another private party. *Kelo v. City of New London*, 545 U.S. 469, 484 (2005). When that happens the state must provide just compensation to the owner. But that doesn't mean that when the state damages private property when exercising its police power there is necessarily a taking. *Johnson v. Manitowoc Cty.*, __ F.3d __, 2011 WL 814996 at *5 (7th Cir. March 10, 2011).

The state may destroy property that is a public nuisance, and that "is very different from taking property for public use, or from depriving a person of his property without due process of law." *Baker v. Mueller*, 222 F.2d 180, 182 (7th Cir. 1955) (quotation omitted). When the state razes a public nuisance, it is acting within its traditional police power. *McKenzie v. City of Chicago*, 118 F.3d 552, 557 (7th Cir. 1997) ("Razing nuisances, like killing diseased livestock and burning infected plants, is a time-honored use of a state's police power"); *see also 409 Land Trust v. City of South Bend*, 709 N.E.2d 348, 350 (Ind. Ct. App. 1999)("Attempts by the Building Department to enforce building and safety codes do not amount to a taking."). And the owner of that nuisance property does not reap a benefit from the state because his property has to be razed to cure the nuisance. *Texaco, Inc. v. Short*, 454 U.S. 516, 530 (1982) (noting "this Court has never required the State to compensate the owner for the consequences of his own neglect"). It's just one of the many burdens that attach to living in a civilized society. That's precisely what happened here. The building was a nuisance, and when Ramsey and then Hendrix refused to fix it, the City had to have it razed. Their neglect does not entitle Hendrix to compensation. In fact, when, as here, the owner retains title to the property, the City has the right to place a lien against the property for the cost of razing the building. Ind. Code § 36-7-9-11(a)(1).

In the complaint, Hendrix alludes to a procedural due process claim as well—his complaint makes allegations to that effect but on appeal the issue is neither clear nor developed. [Tab 12]. Even if he was making a procedural due process claim on the City's use of its police power, it too would fail. We have found that much less notice than what the

City gave satisfies any procedural due process concerns. *See Pierce v. Village of Divernon, Ill.*, 17 F.3d 1074, 1079–80 (7th Cir. 1994) (holding actual notice and an opportunity to abate satisfies the due process concerns). Thus, the district court did not err in granting summary judgment on all of Hendrix's claims concerning the city razing his property.

B.

The district court also found that Smith and Hendrix had waived some claims. In particular, it found that Smith's claims were waived because he fails to allege a cause of action. The complaint makes mention of Smith having a mortgage on the property but nothing more. It is unclear whether Smith was trying to piggy back on Hendrix's claims but to the extent he was, his argument is waived and otherwise without merit. *See Argyrpopulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008) (holding undeveloped claims are waived).

Also, in response to the City's motion for summary judgment, Hendrix made some references to a Fourth Amendment violation. He did not move to amend his complaint, and his allegations concerning a Fourth Amendment violation are undeveloped even on appeal. Accordingly, the district court did not err in holding that Hendrix's Fourth Amendment claims were waived and otherwise without merit. *Id.*

III.

In sum, we agree with the district court that Hendrix has failed to exhaust his state-court remedies. So we lack jurisdiction to rule on his claims. Further, the district court did not err in dismissing Smith's and Hendrix's undeveloped claims. Accordingly, the judgment of the district court is AFFIRMED.